Ryan K. Yagura (Cal. Bar No. 197619)
ryagura@omm.com
Andrea LaFountain (Cal. Bar No. 294496)
alafountain@omm.com
Farrah F.N. Reynolds (Cal. Bar No. 275622)
freynolds@omm.com
**O'MELVENY & MYERS LLP**
400 S. Hope Street
Los Angeles, CA 90071
Telephone: 213-430-6000
Facsimile: 213-430-6407

*Attorneys for Defendants*

LIVE NATION ENTERTAINMENT, INC.,
AND TICKETMASTER L.L.C.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONFIDENT TECHNOLOGIES, INC., A DELAWARE CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>LIVE NATION ENTERTAINMENT, INC., A DELAWARE CORPORATION, AND TICKETMASTER LLC., A DELAWARE LIMITED LIABILITY COMPANY,<br><br>Defendants. | Case No. 17-cv-01066-AJB-KSC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS UNDER F.R.C.P. 12(C)**<br><br>DATE:  October 5, 2017<br>TIME:  PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT<br>COURTROOM:  4C<br>JUDGE: Hon. Cathy Ann Bencivengo |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................. 1

II.     LEGAL STANDARDS ........................................................ 2

   A.     THE SUPREME COURT'S SECTION 101 FRAMEWORK ............... 2

   B.     SUBJECT MATTER ELIGIBILITY IS A THRESHOLD
          LEGAL ISSUE ............................................................ 3

III.    SUMMARY OF THE '578 PATENT ...................................... 4

IV.     ARGUMENT ................................................................... 7

   A.     *ALICE* STEP ONE: THE CLAIMS ARE DIRECTED TO AN
          ABSTRACT IDEA ........................................................ 7

   B.     *ALICE* STEP TWO: THE CLAIMS FAIL TO RECITE AN
          "INVENTIVE CONCEPT" ............................................. 13

      1.     THE RECITED CAPTCHA TEST IS NOT AN
             "INVENTIVE CONCEPT" ........................................ 13

      2.     THE INDEPENDENT CLAIMS RECITE
             CONVENTIONAL COMPUTER FUNCTIONS AND
             CONVENTIONAL PRE-EXISTING HARDWARE
             COMPONENTS .................................................. 16

      3.     THE DEPENDENT CLAIMS ALSO RECITE
             CONVENTIONAL COMPUTER FUNCTIONS AND
             CONVENTIONAL PRE-EXISTING HARDWARE
             COMPONENTS .................................................. 20

V.      CONCLUSION ............................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Advanced Auctions LLC v. eBay Inc.*,
   No. 13CV1612 BEN JLB, 2015 WL 1415265 (S.D. Cal. Mar. 27, 2015) .............. 1, 6

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014) ................................................................................... passim

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*,
   687 F.3d 1266 (Fed. Cir. 2012) ...................................................................... 5

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016) ...................................................................... 4

*Bilski v. Kappos*,
   561 U.S. 593 (2010)...........................................................................1, 3, 20

*buySAFE, Inc. v. Google, Inc.*,
   765 F.3d 1350 (Fed. Cir. 2014) ......................................................................22, 24

*Content Aggregation Solutions LLC v. Blu Products, Inc.*,
   No. 16-cv-00527-BEN-KSC, 2016 WL 6995490 (S.D. Cal. 2016) ...................2, 5, 12

*CyberSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011) ...................................................................... 13

*Datatrak Int'l, Inc. v. Medidata Solutions, Inc.*,
   No. 1:11-cv-00458, 2015 WL 6870109 (N.D. Ohio Nov. 6, 2015) .......................... 20

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014) ...........................................................5, 19, 24

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
   758 F.3d 1344 (Fed. Cir. 2014) ...................................................................... 18

*Electric Power Group, LLC v. Alstom S,A.*,
   830 F.3d 1350 (Fed. Cir. 2016) ...................................................................... 15

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016) ...................................................................4, 15

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*FairWarning IP, LLC v. Iatric Sys., Inc.,*
    839 F.3d 1089 (Fed. Cir. 2016) ................................................................. 5, 14

*Funk Bros. Seed Co. v. Kalo Inoculant Co.,*
    333 U.S. 127 (1948) ......................................................................................... 3

*Gottschalk v. Benson,*
    409 U.S. 63 (1972) ............................................................................................ 2

*In re Smith,*
    815 F.3d 816 (Fed. Cir.) ............................................................................. 17, 20

*In re West View Research, LLC,*
    No. 14-CV-2675-CAB (WVG), 2015 WL 9685577 (S.D. Cal. Dec. 11,
    2015) ............................................................................................................. 1, 5

*Intellectual Ventures I LLC v. Symantec Corp.,*
    234 F. Supp. 3d 601 (D. Del. Feb. 13, 2017) ........................................... 15, 16

*Intellectual Ventures II LLC v. JP Morgan Chase & Co.,*
    No. 13–cv–3777 (AKH), 2015 WL 1941331 (S.D.N.Y. Apr. 28, 2015) ........ 14

*Internet Patents Corp. v. Active Network, Inc.,*
    790 F.3d 1343 (Fed. Cir. 2015) ..................................................................... 3, 9

*Jericho Sys. Corp. v. Axiomatics, Inc.,*
    2015 WL 2165931 (N.D. Tex. May 7, 2015) ................................... 13, 21, 23

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
    132 S. Ct. 1289 (2012) ............................................................................. 3, 4, 14

*Mortgage Grader, Inc. v. First Choice Loan Servs., Inc.,*
    811 F.3d 1314 (Fed. Cir. 2016) ....................................................................... 12

*Nat. Alternatives Int'l, Inc. v. Allmax Nutrition, Inc.,*
    No. 16-CV-01764-H-AGS, 2017 WL 2733923 (S.D. Cal. June 26, 2017) ....... 2

*Netflix, Inc. v. Rovi Corp.,*
    114 F. Supp. 3d 927 (N.D. Cal. Jul. 15, 2015) ............................................... 21

*Papst Licensing GmbH & Co. KG v. Xilinx Inc.,*
    No. 16-CV-00925-LHK, 2016 WL 3196657 (N.D. Cal. June 9, 2016) ........... 12

iii

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*Planet Bingo, LLC v. VKGS LLC*,
    576 F. App'x 1005 (Fed. Cir. 2014)..................................................................... 18, 21, 24

*Prism Technologies LLC v. T-Mobile USA, Inc.*,
    No. 2016-2031, 2017 WL 2705338 (Fed. Cir. June 23, 2017)..................................... 13

*RecogniCorp, LLC v. Nintendo Co. Ltd.*,
    855 F.3d 1322 (Fed. Cir. 2017) ........................................................................ 4

*Smartflash LLC, v. Apple, Inc.*,
    2017 WL 786431 (Fed. Cir. 2017) ..................................................................... 13

*State St. Bank & Trust Co. v. Signature Fin. Grp., Inc.*,
    149 F.3d 1368 (Fed. Cir. 1998) ........................................................................ 1

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    839 F.3d 1138 (Fed. Cir. 2016) ..................................................................... 4, 17

*Trading Techs. Int'l, Inc. v. Lee*,
    137 S. Ct. 453, 196 L. Ed. 2d 330 (2016) .......................................................... 17

*TriDim Innovations LLC v. Amazon.com, Inc.*,
    207 F. Supp. 3d 1073 (N.D. Cal. Sept. 19, 2016) .............................................. 25

*Ultramercial, Inc. v. Hulu, LLC*
    772 F.3d 709 (Fed. Cir. 2014) ...................................................................... 13, 24

*Vehicle Intelligence and Safety LLC v. Mercedes-Benz USA, LLC*,
    2015 WL 9461707 (Fed. Cir. 2015) ............................................................... 4, 19

*Williamson v. Citrix Systems, Inc.*,
    at 899, *aff'd*, 2017 WL 1291313 (Fed. Cir. 2017) ............................................. 23

**STATUTES**

35 U.S.C. § 101 ............................................................................................. 1, 2, 3, 4

**RULES**

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 4

Fed. R. Civ. P. 12(c) ......................................................................................... 3, 4

17-CV-01066-AJB-KSC

I.   **INTRODUCTION**

U.S. Patent No. 8,621,578 ("the '578 Patent") issued in an era when the U.S. Patent and Trademark Office examined patents under the principle that "anything under the sun that is made by man" may be patented. *State St. Bank & Trust Co. v. Signature Fin. Grp., Inc.*, 149 F.3d 1368, 1373 (Fed. Cir. 1998). This over-inclusive standard for patent eligibility opened the door to a flood of broad patents that "ranged from the somewhat ridiculous to the truly absurd." *Bilski v. Kappos*, 561 U.S. 593, 659 (2010) (Breyer, J., concurring).

Over the past few years, the Supreme Court has issued several decisions clarifying the scope of subject matter eligible for patent protection. In *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, the Supreme Court explained that a patent claim is invalid under § 101 of the Patent Act if the claim (1) is directed to an abstract idea and (2) fails to provide an "inventive concept." 134 S. Ct. 2347, 2355 (2014). Recognizing this significant change in law, the Federal Circuit and many district courts have applied *Alice* to invalidate a range of patents that lay claim to abstract ideas.

For example, courts in this district alone have invalidated numerous patents for claiming ineligible subject matter. *See, e.g.*, *In re West View Research, LLC*, No. 14-CV-2675-CAB (WVG), 2015 WL 9685577 (S.D. Cal. Dec. 11, 2015); *Advanced Auctions LLC v. eBay Inc.*, No. 13CV1612 BEN JLB, 2015 WL 1415265 (S.D. Cal. Mar. 27, 2015); *Nat. Alternatives Int'l, Inc. v. Allmax Nutrition, Inc.*, No. 16-CV-01764-H-AGS, 2017 WL 2733923, at *12 (S.D. Cal. June 26, 2017); *Content Aggregation Solutions LLC v. Blu Products, Inc.*, No. 16-cv-00527-BEN-KSC, 2016 WL 6995490 (S.D. Cal. Nov. 29, 2016). Like the patents previously invalidated under § 101, the '578 Patent claims subject matter ineligible for patent protection. The '578 Patent claims a mental process and applies it to the field of computer security.

The '578 Patent is directed to the idea of generating and administering an image-recognition test that provides user access. However, the idea of user authorization has existed for ages, and websites used image-recognitions tests for user

authorization long before Confident Technologies, Inc. ("Plaintiff") filed its patent. The claims of the '578 Patent add nothing inventive to a bare idea. The claims do not improve technology. The claims recite no new hardware. Rather, the claims recite an abstract idea using pre-existing, conventional computers and computer technology. Thus, the claims of the '578 Patent fail the *Alice* test and are invalid as a matter of law.

## II.   LEGAL STANDARDS

### A.   The Supreme Court's Section 101 Framework

"[A]n idea of itself is not patentable." *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972). Patent law protects only concrete and tangible inventions. It does not protect abstract ideas, even when those ideas are claimed in a particular context or implemented with conventional components or technologies. *Alice,* 134 S. Ct. at 2358; *Bilski*, 561 U.S. at 611–12. Fundamental concepts, such as the economic practice of hedging to protect oneself against market fluctuations, or combining multiple types of previously known products for sale, are "'part of the storehouse of knowledge of all men . . . free to all men and reserved exclusively to none,'" and thus may not be subjected to the monopoly granted by our patent laws. *Bilski*, 561 U.S. at 602 (quoting *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948)). The Supreme Court has prescribed a two-step approach for determining whether a claim is drawn to subject matter that falls outside the scope of Section 101. *Alice*, 134 S. Ct. at 2355; *see also Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1298 (2012).

The first step is to determine whether the claim at issue is directed to a "patent-ineligible concept" such as an abstract idea. *Alice*, 134 S. Ct. at 2355. Under *Alice* step one, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015). Further, to obtain a "full understanding of the basic character of the claimed subject matter," courts may consider what the specification describes as the claimed invention's "innovation over the prior art" and its "most important aspect." *Id.* at 1348 (internal citations and quotations omitted).

"[A]nalyzing information by steps people [can] go through in their minds, or by mathematical algorithms, without more . . . [are] mental processes within the abstract-idea category." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1146 (Fed. Cir. 2016). In determining whether the patent has recited an abstract idea, courts might also consider whether the claims improve the functioning of a computer, itself. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016).

Having found the claim is directed to an abstract idea, step two of the *Alice* inquiry searches for an "inventive concept sufficient to transform the nature of the claim into a patent-eligible application." *RecogniCorp, LLC v. Nintendo Co. Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) (internal citations omitted). This concept "must be evident in the claims." *Id.* To transform an abstract idea into patent-eligible subject matter, the additional claimed inventive concept "must be significantly more than the abstract idea itself, and cannot simply be an instruction to implement or apply the abstract idea on a computer." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016). In particular, the inventive concept must involve more than performing the abstract idea using "generic computer implementation." *Alice*, 134 S. Ct. at 2352 (citing *Mayo*, 132 S. Ct. at 1297). In determining whether the claims contain an inventive concept, the courts look at whether the claims are "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *See e.g., Vehicle Intelligence and Safety LLC v. Mercedes-Benz USA, LLC*, 2015 WL 9461707, at *5 (Fed. Cir. 2015) (citing *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014)).

## B.   Subject Matter Eligibility Is A Threshold Legal Issue

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Patentability under § 101 is a legal question suitable for early resolution through a Rule 12 motion. *See e.g., FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097-98 (Fed. Cir. 2016). Courts

may rule on § 101 challenges before construing the claims.  *See, e.g.*, *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("claim construction is not an inviolable prerequisite to a validity determination under § 101.").  In *In re West View*, this Court granted a Rule 12(c) motion on the pleadings on § 101 grounds noting that there is no "bright line rule requiring district courts to construe claims before determining subject matter eligibility," and "[r]elying on *Alice*, an increasing number of district courts have found claim construction unnecessary when determining the eligibility of patents that rely on computer implementation at the motion to dismiss stage."  2015 WL 9685577, at *5  (quotations and citations omitted); *see also Content Aggregation*, 2016 WL 6995490, at *2 ("Subject matter eligibility under 35 U.S.C. § 101 is a question of law that is regularly decided on the pleadings."); *Advanced Auctions*, 2015 WL 1415265  (Benitez, J.)(granting 12(b)(6) motion on § 101 grounds).  Here, claim construction is not necessary.  There is no construction of any term that would save the '578 Patent from patent ineligibility.

### III.   <u>SUMMARY OF THE '578 PATENT</u>

The '578 Patent is directed to a type of "test generally known as a Completely Automated Public test to Tell Computers and Humans Apart (hereinafter "CAPTCHA")."  '578 Patent at 2:39-42.  The '578 Patent does not purport to have invented CAPTCHA and admits that prior art CAPTCHA tests existed at the time of the claimed invention.  *See id.* at 2:46-54 (describing text-based prior art "CAPTCHA tests," which used a distorted piece of text and asked the



'578 Patent, Figure 2

user to identify the characters).  According to the '578 Patent, websites use CAPTCHA to reduce improper access to their content and resources by malicious programs that "register for service on a large scale, consume large amounts of resources or bias results in on-line polls or voting."  *Id.  See id.* at 2:42-49.  CAPTCHA tests purportedly attempt to screen malicious programs from improper access by requiring a user to correctly complete a test.  *See id.* at 2:42-53.  The '578 Patent claims a version of the test "which requires users to select randomly generated images from a dynamic graphical arrangement of images."  *Id.* at 3:12-16.  The claimed method grants a user access to a website if the user correctly answers the test by selecting images from a certain category.  *See, e.g.,* '578 Patent at Claim 1.

The '578 Patent recites two independent claims (Claims 1 and 9) and 15 dependent claims (Claims 2-8, and 10-17).  The '578 Patent recites only method claims. '578 Patent, Claims 1 and 9.  Claim 1 describes a process for (1) "generating" an image recognition test in response to an access request from a user; (2) "presenting" the image recognition test to the user; (3) "communicating" an image recognition test to the user; (4) "receiving" an input from the user that takes the image recognition test at a "server system"; (5) "comparing" the input from the user at a "server system"; (6) and "grant[ing] access" to the user if the user correctly answers the image recognition test.  *See id.*  As shown in Figure 2, *supra*, the image recognition task requires the user to select images from a selected image category, such as automobiles.  If the user selects "at least one image known to belong to the selected image category and select[s] or omi[ts] at least one image suspected to belong to the selected image category," the user is granted access to the website.



'578 Patent, Figure 4

1  *See id.* at Claim 1.

2       With regards to the "server system" of Claim 1, the '578 Patent states that a

3  "server system 40" is implemented using conventional computer components such as

4  "a computer readable memory 52, the comparator 48 and a communications interface

5  such as a modem or network adapter;" "a secured network, file systems or resources

6  and information stored in data bases;" and "file servers (Web site servers),

7  authentication servers, password data bases, repositories or databases of images or

8  icons." *See, e.g., id.* at 7:7-21.  "The comparator 48 in the server system 40 can compare

9  the one or more access codes entered by the user to reference access codes to

10  determine whether they correspond to each other and match." *Id.* at 8:21-24.  The

11  "user access device" of Claim 1 "may include various devices such as a desktop or

12  laptop computer, a PDA, an ATM, or any device capable of displaying images having a

13  key entry pad keyboard, or other device for selecting images from the selected

14  category."  *Id.* at 7:33-37.  Figure 4 illustrates the server system 40 provided in

15  accordance with the purported invention.

16       Claim 9 recites a method "for selectively accepting access requests from a client

17  computer connected to a server computer by a network."  *Id.* at Claim 9.  Claim 9

18  further recites (1) "receiving an access request from the client computer at an

19  authentication server"; (2) "generating" a matrix of images; (3) "presenting" the images

20  "on an output device of the client computer"; (4) "receiving an input from the client

21  computer at the authentication server"; (5) "accepting the access request" on an

22  "authentication server"; and (6) "grant[ing] access" to the user if the user correctly

23  answers the image recognition task.  *See id.* at Claim 9.  Claim 9 is a pure authentication

24  method with no language limiting the method to the field of CAPTCHA tests.

25       Claim 9 recites use of generic and conventional hardware elements such as a

26  "client computer," "a server computer," "a network," "an authentication server," an

27  "output device," and the "user access device" of Claim 1.  First, "client computer,"

28  "server computer," "network," and "output device" are not defined by the

17-CV-01066-AJB-KSC

specification and are, thus, understood to be generic and conventional components that existed at the time of the invention.  Second, where examples are provided for any of these components, the specification makes clear that they are generic and conventional components.  For example, "the access device and server systems can communicate over a variety of telecommunication systems generally known in the arts." *Id.* at 7:48-54.  "The display device may be any type of display capable of displaying various images, such as computer monitors and flat panel displays." *Id.* at 7:44-46.  And the authentication systems and methods "may incorporate software using techniques known in the prior art." *Id.* at 8:26-30.  Lastly, "[t]he authentication server generates a dynamic graphical arrangement of images in response to the access request"; and it "is connected to the display device via a network and can compare the selected access codes against an authenticating reference code." '578 Patent at 1:36-38 and 4:66-5:3.  And the components "implemented in the authentication systems and methods …, may incorporate software using techniques known in the prior art." *Id.* at 8:26-30.

The dependent claims add certain limitations to Claims 1 and 9.  All of the limitations use generic and conventional computer functions and pre-existing technology.  For example, certain limitations use advertisements and hyperlinks to an advertiser website in place of at least one of the randomly selected images. *Id.* at Claims 4-5 and 16-17.  Other limitations include use of account and access device identifiers (Claim 3), alphanumeric access codes (Claims 6 and 12), Web enabled computers or mobile devices (Claims 7 and 17), selection of multiple images (instead of one) from the selected image category (Claim 8), a cursor (Claim 10), and random access codes (Claim 11).

## IV.   ARGUMENT

### A.   *Alice* Step One: The Claims Are Directed To An Abstract Idea

The specification and the language of the claims demonstrate that the '578 Patent's "most important aspect" and "innovation over prior art" is its image

recognition test requiring users to make a selection from a matrix of images.  *See Internet Patents Corp.*, 790 F.3d at 1348; *see also* '578 Patent at 2:50-56 (describing prior art "texted based" CAPTCHA), 3:12-16 (claiming the purported invention is "improved" because it requires users to select images).  In exchange for completing the image recognition test, users are granted access to a website.  *See,* '578 Patent at Claims 1 and 9 (emphasis added).[1]  But this process is unpatentably abstract.  It can be performed using pen and paper.  And the '578 Patent does nothing more than apply this abstract process to the field of computer security.  The result is not an improvement to computer technology.  The '578 Patent thus fails the first step of *Alice*.

The basic idea claimed by the '578 Patent—granting access in exchange for completing a test—can be performed by a human using pen and paper.  As demonstrated by the below analogies, the claims are drafted broadly enough to cover a paper-based test a child might receive in elementary school:

| '578 Patent, Claim 1 | Analogy |
| --- | --- |
| 1. A method for generating a completely automated test to tell computers and humans apart comprising: | Louie's method for creating a test using pen and paper. |
| generating a matrix of non-overlapping randomly selected images in response to an access request of a user, the dynamic graphical arrangement comprising one randomly selected image from a selected image category chosen for an image recognition task and at least one image not from the selected image category, wherein each image is associated with a unique randomly generated access code, wherein the image recognition task comprises an instruction to select one image corresponding to the selected image category from the matrix of non-overlapping randomly selected images; | In response to a request from Otto to access content, Louie draws a test containing a box of images.  One image is a dog and the remaining images are fruit.  Each image corresponds to a number.  Below the box of images, Louie writes an instruction to select the image corresponding to a dog. |

---

[1] Because Claims 1 and 9 are the only independent claims, the remaining claims, by definition, are directed to the same abstract idea as those recited in the independent claims.

| '578 Patent, Claim 1 | Analogy |
|---|---|
| presenting the dynamic graphical arrangement of randomly selected images to the user and communicating the image recognition task to the user; | Louie presents the test to Otto, including the instruction to select the image of the dog. |
| receiving an input from the user access device at a server system, the input comprising the unique randomly generated access code associated with the one image from the selected category; | Otto takes the test by selecting the number corresponding to the image of the dog.  Otto returns the test to Louie. |
| the server system comparing the input from the user access device to an authenticating reference code to confirm the user is a human and not a computer; and | Louie checks Otto's test to determine whether he picked the correct number corresponding to the dog. |
| wherein the matrix comprises at least one image known to belong to the selected image category, at least one image known to not belong to the selected image category and at least one image suspected to belong to the selected image category and wherein the user is still granted access to the website when the input from the user access device comprises selection of the at least one image known to belong to the selected image category and selection or omission of the at least one image suspected to belong to the selected image category. | The test containing the box of images comprises one dog, several pieces of fruit, and a small puppy.  If Otto chose the dog and the small puppy, Otto would be granted access to the content.  And if Otto chose the dog but omitted the small puppy, Otto would also be granted access to the content. |

| '578 Patent, Claim 9 | Analogy |
|---|---|
| 9. A method for selectively accepting access requests from a client computer connected to a server computer by a network, the method comprising: | Louie's method for accepting requests to access content. |
| receiving an access request from the client computer at an authentication server; | Otto requests from Louie access to content. |

17-CV-01066-AJB-KSC

| '578 Patent, Claim 9 | Analogy |
|---|---|
| the authentication server generating a matrix of non-overlapping images in response to the access request, wherein the matrix of non-overlapping images comprises at least one randomly selected image from a randomly selected image category chosen for an image recognition task and at least one image not from the randomly selected image category, wherein the image recognition task comprises an instruction to select one image corresponding to the selected image category from the matrix of non-overlapping randomly selected images; | In response to a request from Otto to access content, Louie draws a test containing a box of images. One image is a dog and the remaining images are fruit. Each image corresponds to a number. Below the box of images, Louie writes an instruction to select the image corresponding to a dog. |
| presenting the dynamic graphical arrangement of images on an output device of the client computer; | Louie presents the test to Otto. |
| receiving an input from the client computer at the authentication server, the input comprising a user selection of at least one image; | Otto takes the test by writing in his answers. |
| the authentication server accepting the access request if the user selection of the at least one image corresponds to the image chosen from the selected image category and otherwise denying the access request; and | Louie checks Otto's test to determine whether he picked the correct number corresponding to the image of a dog. |
| Wherein the matrix comprises at least one image known to belong to the selected image category, at least one image known to not belong to the selected image category and at least one image suspected to belong to the selected image category and wherein the user is still granted access to the website when the input from the user access device comprises selection of the at least one image known to belong to the selected image category and selection or omission of the at least one image suspected to belong to the selected image category. | The test containing the box of images comprises one dog, several pieces of fruit, and a small puppy. If Otto chose the dog and the small puppy, Otto would be granted access to the content. And if Otto chose the dog but omitted the small puppy, Otto would also be granted access to the content. |

Because the steps of the claimed process can be performed on paper, "the claim is likely directed to an abstract idea." *Content Aggregation*, 2016 WL 6995490, at *3. That the '578 Patent claims recite generic computer components, such as a "user access device," or "server system," does not make them any less abstract. The Federal Circuit has held that when claims literally require the use of a computer, they are still

17-CV-01066-AJB-KSC

abstract if they nevertheless reflect routine automation of activities, which "could all be performed by humans without a computer." *Mortgage Grader, Inc. v. First Choice Loan Servs., Inc.*, 811 F.3d 1314, 1324 (Fed. Cir. 2016). The Northern District of California in *Papst Licensing GmbH & Co. KG v. Xilinx Inc.*, has similarly ruled that a claim's literal "use of 'software and computers' does not undermine Defendant's argument" that the claim can be carried out mentally or with a pencil and paper. No. 16-CV-00925-LHK, 2016 WL 3196657, at *18 (N.D. Cal. June 9, 2016). Thus, because the '578 Patent claims a process that "can be performed in the human mind or by a human using a pen and paper," the idea underlying that process is abstract. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011).

Courts routinely find patents reciting processes for authorizing, detecting, or controlling access abstract. In *Prism Technologies LLC v. T-Mobile USA, Inc.*, the Federal Circuit invalidated a patent directed to "the abstract idea of 'providing restricted access to resources.'" No. 2016-2031, 2017 WL 2705338, at *2 (Fed. Cir. June 23, 2017). In *Ultramercial, Inc. v. Hulu, LLC*, the Federal Circuit invalidated claims directed to granting access to media content in exchange for watching an advertisement. 772 F.3d 709 at 715-16 (Fed. Cir. 2014). In *Smartflash LLC, v. Apple, Inc.*, the Federal Circuit also invalidated claims directed to the abstract idea of conditioning and controlling access to data based on payment. 2017 WL 786431, *4-*6 (Fed. Cir. 2017). And in *Jericho Sys. Corp. v. Axiomatics, Inc.*, the court invalidated a patent directed to the concept "that people who meet certain requirements are allowed to do certain things" for claiming an abstract idea. 2015 WL 2165931, at *5 (N.D. Tex. May 7, 2015). These abstract ideas and processes are no different than the process claimed by the '578 Patent where access to content is conditioned on correctly answering a test. *See* '578 Patent at Claims 1 and 9.

Applying this abstract process over "a network" per the preamble of Claim 9, or in the context of "a completely automated test to tell computers and humans apart" per the preamble Claim 1, does not transform the process into a patentable invention.

*See Alice*, 134 S. Ct. at 2358 (applying abstract idea to "a particular technological environment" not patentable).  Courts have rejected similar patents that attempted to limit abstract processes to a computer security environment.  For example, in *FairWarning IP*, the Federal Circuit found that a patent directed to computer fraud detection recited "a combination of [certain] abstract-idea categories."  839 F.3d at 1093-95.  Although the preamble of the claim at issue limited those steps to "detecting improper access. . . in a computer environment," the court found the claim did nothing more than "implement an old practice in a new environment."  *Id.* at 1092, 1094.  Similarly, in *Intellectual Ventures II LLC v. JP Morgan Chase & Co.*, the court found a patent directed to "monitoring multiple computer hosts within a network for anomalies, and alerting the various hosts of possible intrusion" recited a series of abstract steps.  No. 13–cv–3777 (AKH), 2015 WL 1941331, at *1-3, 15 (S.D.N.Y. Apr. 28, 2015).  The court rejected the claims, despite that the preamble "limit[ed] the process to computer networks containing two or more devices and at least one firewall," because the claims did nothing more than attempt "to limit the use of the formula to a particular technological environment."  *Id.* (quoting *Mayo*, 132 S.Ct. at 1297).  The claims in this case fail for the same reasons.  Claim 1 also applies a series of abstract steps in the context of computer security—namely, a method for "generating a completely automated test to tell humans and computers apart."  '578 Patent at Claim 1.  And the preamble of Claim 9 merely limits the same process for providing user access to a "network."  Thus, the claims are directed to an abstract idea.

The '578 Patent is not "directed to improvements in computer-related technology" either.  *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) (citing *Enfish* at 1335-36).  In *Intellectual Ventures I LLC v. Symantec Corp.*, the court found that the claims at issue did not improve the way computers function because they "rely on the ordinary storage and transmission capabilities of computers within a network and apply that ordinary functionality in the particular context of remote mirroring."  234 F. Supp. 3d 601, 607-608 (D. Del. Feb. 13, 2017).  Further,

- 12 -                              17-CV-01066-AJB-KSC

the court rejected the plaintiff's argument that the specification's identification of disadvantages in prior art demonstrated that they were directed to solving a specific technological problem because "[t]he claims do not provide any concrete details that limit the claimed invention to a specific solution." *Id.* at 607.  Similarly, the claimed methods of the '578 Patent recite an abstract process and do nothing more than apply it in the context of "generating a completely automated test" or over a "network."  *See* '578 Patent at Claims 1 and 9.  Although the '578 Patent asserts that it provides an "improved" CAPTCHA test (*see id.* at 3:11-13), there is no detail anywhere in the patent that the claims solve the deficiencies of the prior art.  As was the case in *Intellectual Ventures I,* "[t]he specification's insistence that the claimed invention is an 'advancement' over the prior art does not overcome the Court's conclusion that the ***claims as written*** focus on an abstract idea." *Id.* (emphasis in original).

The claims thus fail the first step of *Alice*.

### B.     *Alice* Step Two: The Claims Fail to Recite an "Inventive Concept"

The claims of the '578 Patent contain no inventive concept that transforms its abstract idea into patentable subject matter.  Claims 1 and 9 recite a CAPTCHA test using nearly identical conventional components and functions.  With minor differences, the dependent claims also recite performance of the same CAPTCHA test using similarly generic computer functions and hardware components.  Neither the ordered combination (the particular CAPTCHA test) nor the individual components contain an inventive concept.

### 1.     The Recited CAPTCHA Test Is Not An "Inventive Concept"

The ordered combination of the individual claim elements describes one particular CAPTCHA test.  '578 Patent at Claims 1 - 17.  The specification makes clear that the '578 Patent did not invent the concept of CAPTCHAs.  '578 Patent at 2:39-54.  In fact, CAPTCHAs were known, and websites used CAPTCHAs for authenticating users. *Id.*  Like the '578 Patent, pre-existing CAPTCHA tested the user's ability to recognize content displayed by an image. *Id.*  Prior art CAPTCHAs

required users to recognize an image in the form of blurred text. *Id.* at 2:50-54.   For example, the image could display the word "automobile" using blurred text.  The user might then be asked to input the word displayed by the image.

The '578 Patent claims also require users to recognize an image.  But instead of displaying the word "automobile," the claims of the '578 Patent display the image of an automobile. *Id.* at Claims 1-17.  The user is then asked to select as their input the image that shows an automobile. *Id.*  Without any explanation, the '578 Patent purports that this new test is "improved." *Id.*  at 3:12.  Rather, the specification lists two prior art deficiencies: (1) "user friendliness is lacking" (*id.*  at 2:54-56) and (2) "automated attacks are not eliminated by current CAPTHCA [sic] tests" (*id.* at 2:55-56).  But the specification is silent as to ***how*** the image recognition test recited in the claims overcomes these deficiencies, ***if at all***.  In fact, the method as written does not and cannot actually tell apart humans from computers.  '578 Patent at Claims 1-17.  It merely tests whether a user can select images from a particular category. *Id.*  If a computer can detect the category of the image, the computer will be given access.

To the extent this process is actually an improvement (which it is not), courts have repeatedly held improvements to a process—rather than to the computer or technology itself—is insufficient for patentability. *See, e.g., Synopsys*, 839 F.3d at 1152. *See also In re Smith*, 815 F.3d 816, 819 (Fed. Cir.), *cert. denied sub nom. Trading Techs. Int'l, Inc. v. Lee*, 137 S. Ct. 453, 196 L. Ed. 2d 330 (2016) (quoting *Alice*, 134 S.Ct. at 2358-59) (finding ineligible a patent "attempt[ing] to claim a new set of rules for playing a card game" using conventional activity).  In *Synopsys, Inc.*, the patents described a method for translating hardware description language (HDL) into hardware component descriptions. *Id.* at 1142.  HDL code had existed in the prior art—just as CAPTCHA existed before the '578 Patent—and what had been invented was use of assignment conditions for interpreting the HDL code into circuit diagram. *Id.* at 1143.  Even though the claims were rooted in hardware description language, the Federal Circuit found the claims ineligible because they were a mental process and failed to aid

computer efficacy or solve a technical problem. *Id.* at 1151-52. Here, the '578 Patent is also a mental process: one that uses multiple pre-categorized images to perform a CAPTCHA test. Even assuming the method improves CAPTCHA,[2] the alleged improvement does not improve the functioning of the computer or provide a technical solution. It merely replaces recognition of blurred texts with recognition of images of objects belonging to a category. As such, it does not confer patentability.

Additionally, use of categories for user authentication has consistently been found insufficient for patentability. *See, e.g., Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1008 (Fed. Cir. 2014). In *Planet Bingo,* the claims used generic and conventional elements to assign a "player identifier" and a "control number," which would then be compared to a winning set of bingo numbers before a player could play multiple bingo games. *Id.* The control number is analogous to the image "category," the player identifier to the "access codes," and the winning numbers to the criterion category used for granting access. There is nothing inventive about the '578 Patent's use of categories and access codes in connection with user authentication.

Even use of categorized images is not inventive. *See Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344 (Fed. Cir. 2014). In *Digitech*, the images were categorized based on the device profile with which the images were captured. *Id.* at 1349-50. The Federal Circuit held data in its ethereal, non-physical form is ineligible. The court invalidated the claims because they encompassed information without regard to "the process through which th[e] information [was] obtained or the physical medium in which it is stored." *Id.* at 1349–50. The '578 Patent claims also recite use of category information in an ethereal, non-physical form. They are not tied to any process through which the information is obtained. For example, there is no information on how the images are categorized or how the category information is

---

[2] As stated above, the Patent is silent as to why or how CAPTCHA is improved, '578 Patent at 3:11-14.

1   obtained.

2        Lastly, alleged improvements that are not tied to the claims are insufficient

3   under *DDR Holdings,* 773 F.3d at 1257.  In *Vehicle Intelligence*, the Federal Circuit

4   subsequently found bare disclosures were not enough to show that the claims

5   overcame a technological problem.  In that case, "the specification [did] not explain . .

6   . improvements over the prior art" and instead listed several advantages of the

7   invention "without explaining how the expert system achieves these advantages."

8   2015 WL 9461707, at *5 (Fed. Cir. 2015).  The Court found that "such bald assertions

9   made at such a ***high level of generality and not tied to any claim language***" did

10   not save the claims from patent-ineligibility.  *Id.* (emphasis added).  Similarly, the '578

11   Patent's assertion that the purported invention provides an "improved" test goes

12   unsupported and unexplained.  There are no details that limit the claimed invention to

13   a specific solution over prior art.  Thus, the '578 Patent does not solve a problem

14   unique to computer networks either.

15        As such, the ordered combination of the components, the particular

16   CAPTCHA claimed by the '578 Patent, does not contain an inventive concept

17   sufficient to transform the claims into patentable subject matter.

18
19      **2.    The Independent Claims Recite Conventional Computer Functions and Conventional Pre-existing Hardware Components**

20        Decisions from the Federal Circuit and district courts have, at step two, rejected

21   claims reciting nearly identical computer components and functions as Claims 1 and 9,

22   including "use of tables/matrices," "random selection," "graphical displays,"

23   "categorization," "assignment of identifiers," "sending instructions and receiving

24   input,"  "authentication," "user device," "computer network," and "server system."

25   The computer components of the independent claims thus do not add an inventive

26   concept.

27           a.   The Independent Claims Recite Conventional Computer

28               Functions

All the computer functionalities recited by Independent Claims 1 and 9 are conventional.  For example, the specification describes the *matrix* as a table of rows and columns.  '578 at 4:47-48.  In *Datatrak Int'l, Inc. v. Medidata Solutions, Inc.*, the court found that "use of tables and indexes … are longstanding principles that have been in use for ages," and a generic use thereof are insufficient for patentability.  No. 1:11-cv-00458, 2015 WL 6870109, at *5 and 7 (N.D. Ohio Nov. 6, 2015).  As such, the use of a matrix is conventional and does not confer patentability.

Similarly, Claims 1 and 9 recite use of "randomly selected images" and "randomly generated access codes," '578 Patent at Claims 1 and 9, but *randomizing* data is a longstanding, conventional computer function.  In *In re Smith*, the Federal Circuit found dealing random set of cards (i.e. "shuffling" and "dealing") was "purely conventional."  815 F.3d at 819.  *See also Bilski*, 561 U.S. at 599 and 612 (finding randomization analysis techniques did not transform the abstract idea into patentable subject matter).

Claims 1 and 9 also recite *associating* the randomly generated access codes with the randomly selected images. '578 Patent at Claims 1 and 9.  The process of associating a number or code with a digital object is a routine computer function that is as old as computers.  It does not contain an inventive concept.  For example, in *Planet Bingo,* the Federal Circuit invalidated claims that assigned a "player identifier" and a "control number" and compared them to the "winning" set of numbers.  576 F. App'x at 1008-09.  Associating access codes with images is similar to assigning a player identifier and adds nothing more to the abstract idea.

Lastly, Claims 1 and 9 recite *authenticating* access by comparing the input from the user access device to an authenticating reference code. '578 Patent at Claims 1 and 9.[3]  This activity has been found generic as well. In *Jericho Systems*, "receiving a user

---

[3] Claim 9 recites similar functionality without reference to the authenticating reference code.

17-CV-01066-AJB-KSC

request," "generating" a rule, and "evaluating" the user request to "determine whether the user is authorized" was struck down as non-inventive. *Jericho Systems Corp.,* 2015 WL 2165931 at *4. The authentication recited by Claims 1 and 9 uses identical functionality and does not transform the CAPTCHA process into something more.

b. <u>The Independent Claims Recite Conventional, Pre-existing Hardware Components</u>

The Independent Claims 1 and 9 recite use of: a *client computer,* a *server computer*, a *network*, an *authentication server*, an *output device*, a *user access device*, and a *server system*. '578 Patent at Claims 1 and 9. First, neither the claims nor the specification define the *client computer, server computer*, *network*, *authentication server*, *access device*, or *output device*. '578 Patent. They are, thus, generic and conventional components that existed at the time of the invention and do not comport patentability to the claims. *Alice* at 2630 (finding use of "unspecified, generic computers" not enough to transform the abstract idea into a patent-eligible invention). *See also Netflix, Inc. v. Rovi Corp.,* 114 F. Supp. 3d 927, 949 (N.D. Cal. Jul. 15, 2015) ("the court [found] that a 'client device' is no more particular than a generic 'general purpose computer.'").

Second, to the extent examples are provided for these components, the specification makes clear they are generic and conventional components, which do not confer patentability. For example, according to the specification, the *user access device* "may include various devices such as a desktop or laptop computer, a PDA, an ATM, or any device capable of displaying images having a key entry pad keyboard, or other device for selecting images from the selected category." *Id.* at 7:33-37. "The display device may be any type of display capable of displaying various images, such as computer monitors and flat panel displays." *Id.* at 7:44-46. This is exactly the type of component found non-inventive in *Alice*. 134 S.Ct. at 2360. In *Alice*, the Supreme Court found that "nearly every computer will include a 'communications controller' and 'data storage unit' capable of performing the basic calculation, storage, and transmission functions required by the method claims." *Alice* at 2360. Similarly, nearly

1   every computer or mobile device will have a monitor or screen capable of displaying

2   images and a keyboard or other input device for selecting images.  As such, the *user*

3   *access device* does not contain an inventive concept.

4        The *network* does not fare any better: "the access device and server systems can

5   communicate over a variety of telecommunication systems generally known in the

6   arts." *Id.* at 7:48-54.  In *buySAFE, Inc. v. Google, Inc.*, the Federal Circuit held, "[t]hat a

7   computer receives and sends the information over a network—with no further

8   specification—is not even arguably inventive."  765 F.3d 1350, 1355 (Fed. Cir. 2014).

9   The '578 Patent's generic disclosures regarding the network are as generic as those

10  found in *buySAFE*.

11       With respect to the *authentication server*, the details provided only confirm its

12  conventionality: "[t]he authentication server generates a dynamic graphical

13  arrangement of images in response to the access request"; and it "is connected to the

14  display device via a network and can compare the selected access codes against an

15  authenticating reference code." '578 Patent at 1:36-38 and 4:66-5:3.  And "the

16  comparator, and other components … implemented in the authentication systems and

17  methods …, may incorporate software using techniques known in the prior art."  *Id.* at

18  8:26-30.  Nothing about the provided details regarding the *authentication server* comports

19  inventiveness.  In *Jericho*, the court invalidated a patent that recited generic computer

20  technology and the steps of "receiving a user request," "generating" a rule, and

21  "evaluating" the user request to "determine whether the user is authorized."  2015 WL

22  2165931, at *4.  The authentication server in the '578 Patent is described in functional

23  terms only and performs the same functions as the component found conventional in

24  *Jericho* and do so using techniques known in the art.  As such, it cannot confer

25  patentability to the '578 Patent claims.

26       Lastly, the '578 Patent states that a *server system* is implemented using

27  conventional computer components such as "a computer readable memory 52, the

28  comparator 48 and a communications interface such as a modem or network adapter;"

"a secured network, file systems or resources and information stored in databases;" and "file servers (Web site servers), authentication servers, password data bases, repositories or databases of images or icons." '578 Patent at 7:7-21. "The comparator 48 in the server system 40 can compare the one or more access codes entered by the user to reference access codes to determine whether they correspond to each other and match." *Id.* at 8:21-24. There is nothing inventive about any of this. In *Williamson*, a "distributed learning server" was found to be generic and non-inventive where "the asserted claims themselves d[id] not contain any limitations regarding specific hardware or software, and the specification provide[d] that the claimed distributed learning system 'uses industry-standard computer hardware and software linked a network.'" *Williamson v. Citrix Systems, Inc.*, 212 F. Supp. 3d 887, 899, *aff'd, sub nom. Williamson on behalf of At Home Bondholders' Liquidating Tr. v. Citrix Sys., Inc.*, No. 2016-1714, 2017 WL 1291313 (Fed. Cir. Apr. 7, 2017). Similarly, the '578 Patent claims do not place meaningful limitations on the *server system*, and the specification makes clear that the *server system* uses generic and industry-standard hardware and software. Thus, the server system contains no inventive concept.

**3.     The Dependent Claims Also Recite Conventional Computer Functions and Conventional Pre-existing Hardware Components**

Dependent Claims 2-8 and 10-17 do not add an inventive concept either. For example, Claim 3 recites use of *account identifier* and *access device identifier*, which are conventional computer functions. In *Planet Bingo*, the claims recited a program that used "a player identifier and a control number" and compared them to a set of winning numbers. 576 F. App'x at 1008. The Federal Circuit found these purely conventional. *Id.* at 1009. Use of account identifiers and access device identifiers are no different than the player identifier. They use generic computer functionality and are conventional functions for computers.

Claims 4-5 and 16-17 recite use of *advertisements* and *hyperlinks*. The Federal Circuit has found use of advertising in connection with digital content and use of

standard hyperlink protocol is routine and conventional.  *See Ultramercial*, 772 F.3d at 715-16; *DDR Holdings,* 773 F.3d at 1257-59.  Claims 4-5 and 16-17 of the '578 Patent recite conventional use of these functions, and are thus non-inventive.

Claim 7 and 14 recite use of a *Web-enabled computer* or *mobile device*, which are not even arguably inventive.  *See buySAFE, Inc.*, 765 F.3d at 1355 ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive.").

Lastly, Claim 10 recites selection of images by pointing to and clicking a *cursor*. In *TriDim Innovations LLC v. Amazon.com, Inc.*, the Court invalidated claims that involved pointing using a cursor.  207 F. Supp. 3d 1073, 1080 (N.D. Cal. Sept. 19, 2016).  As such, the cursor cannot comport inventiveness to the claims.  The dependent claims use only generic computer functionality and recite generic pre-existing technology, which do not transform them into patentable subject matter.

## V.   **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss all claims of infringement based on the '578 Patent.

Dated: August 31, 2017              By:  */s/ Ryan K. Yagura*
                                                Ryan K. Yagura (Cal. Bar No. 197619)
                                                ryagura@omm.com
                                                Andrea LaFountain (Cal. Bar No. 294496)
                                                alafountain@omm.com
                                                Farrah F.N. Reynolds (Cal. Bar No. 275622)
                                                freynolds@omm.com
                                                **O'MELVENY & MYERS LLP**
                                                400 S. Hope Street
                                                Los Angeles, CA 90071
                                                Telephone: 213-430-6000
                                                Facsimile: 213-430-6407

                                                Attorneys for Defendants
                                                LIVE NATION ENTERTAINMENT, INC., AND TICKETMASTER L.L.C.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS UNDER F.R.C.P. 12(C)** has been served on August 31, 2017, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic mail, facsimile, and/or overnight delivery.

_s/Ryan K. Yagura_
Ryan K. Yagura (SBN 197619)

17-CV-01066-AJB-KSC